Charles A. SCHICKE et al.

v.

UNITED STATES of America et al.

Civ. No. B–169.

United States District Court,
D. Connecticut.

May 3, 1972.

John Keogh, Jr., Norwalk, Conn., for plaintiffs.

Leonard S. Hermann, Frank W. Murphy, South Norwalk, Conn., Robert Killian, State Atty. Gen., Robert E. O'Neill, Asst. Atty. Gen., Hartford, Conn., Harland F. Leathers, Chief General Litigation Section, Paul D. Cullen, General Litigation Section, Justice Dept., Washington, D. C., Stewart H. Jones, U. S. Atty., B. Blair Crawford, Richard L. Winter, Asst. U. S. Attys., Bridgeport, Conn., for defendants.

## RULINGS ON DEFENDANT ROMNEY'S MOTION FOR A PROTECTIVE ORDER and DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, Chief Judge.

This is an action to obtain a declaratory judgment that the approval of the defendant United States, acting through the defendant Secretary of Housing and Urban Development (HUD), George Romney, of the withdrawal of certain land acquired by the defendant City of Norwalk under the Open Space Land Program, enacted by the Housing Act of 1961, 42 U.S.C. §§ 1500–1500e, for use as a park was illegal and invalid, to enjoin the City of Norwalk from conveying the land at issue to the State of Connecticut, and to enjoin the city and state from constructing a community or regional college on the land in question.

### I.

The instant action had its genesis in the City of Norwalk's acquisition in 1965 of approximately 196 acres of land, known as the Gallagher Estate, for use as a park. A grant of federal funds equal to one-half the acquisition cost was obtained pursuant to certain provisions of the Housing Act of 1961. These provisions established the Open Space Land Program and authorized the Secretary of HUD to make grants of federal funds to states and local public bodies for the acquisition and development of land to be used as permanent open space land.[1]

---

1. 42 U.S.C. § 1500a(a) provides:
 "The Secretary is authorized to make grants to States and local public bodies to help finance (1) the acquisition of title to, or other interest in, open-space land in urban areas and (2) the development of open-space or other land in urban areas for open-space uses. The amount of any such grant shall not exceed 50 per centum of the eligible project cost, as approved by the Secretary, of such acquisition or development. Not more than 50 per centum of the non-Federal share of such eligible project cost may, to the extent authorized in regulations established by the Secretary, be made up by donations of land or materials."

The City of Norwalk subsequently decided to withdraw some 57 acres of the aforementioned 196 acres of open space land and offer it for sale to the State of Connecticut for use as a site for the Norwalk Community College. The City of Norwalk has identified certain land, known as the Taylor Farm Property, as land which it proposes to substitute for converted open space land. Section 1500c of the Housing Act of 1961 allows open space land acquired with federal funds to be converted upon the approval of the Secretary of HUD provided certain conditions are met. He has approved the proposed conversion of 43 aces of the open space land and has under consideration the proposed conversion of the remaining 14 acres.

The plaintiffs' complaint, as amended, challenges the merits of the Secretary's decision to approve the proposed conversion of 43 acres and alleges that his decision was arbitrary, capricious and an abuse of discretion.

The history of the instant action is rather lengthy and complex. In a Memorandum of Decision, dated May 25, 1971, this court denied the federal defendants' motion to dismiss the action for lack of jurisdiction over the subject matter and for failure to state a claim on which relief can be granted, denied the defendant City of Norwalk's motion to dismiss, and granted the defendant State of Connecticut's motion to dismiss. At the same time, the court reserved decision on the federal defendants' motion for summary judgment in order to allow the parties additional time within which to submit any further material deemed relevant to the consideration of the motion.

In a later Memorandum of Decision, dated October 7, 1971, the court ruled that the federal defendants' motion for summary judgment would be ripe for determination but for the incompleteness of the administrative record before the court and allowed additional time to rectify this deficiency. In a subsequent Memorandum of Decision, dated November 24, 1971, the court denied the federal defendants' motion for summary judgment on the ground that the record before the court was not adequate for review of the Secretary's decision approving the conversion because of the lack of formal findings by him.

On January 24, 1972, the Secretary submitted formal findings relating to his approval of the conversion, and the federal defendants renewed their motion for summary judgment. On February 3, 1972, the defendant City of Norwalk also moved for summary judgment. On the same day, the plaintiffs filed a notice of deposition of the Secretary and requested that a ruling on the defendants' motions for summary judgment be deferred until after they had deposed the Secretary. On February 14, 1972, however, the Secretary moved for a protective order quashing the notice of deposition. On April 14, 1972, a hearing was held on the aforementioned motions. The parties having submitted supplementary briefs on these motions, they can now be ruled upon.

## II.

Before passing on Secretary Romney's motion for a protective order and the defendants' motions for summary judgment, it should be noted that judicial review of the Secretary's decision approving the conversion of the open space land in question is limited in scope.

In the Memorandum of May 25, 1971, it was held that judicial review of the Secretary's decison was narrowly restricted to the following inquiries:

"(1) 'whether the Secretary acted within the scope of his authority,' Overton Park, 39 U.S.L.W. at 4291 (footnote omitted); (2) whether 'the actual choice made was . . . "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2) (A) (Supp. V),' id. (footnote omitted); and (3) 'whether the Secretary's action followed the necessary procedural requirements.' Id. at 4292." (Memorandum at 13–14).

It was noted that "this case raises the first two inquiries," the first of which

"requires 'a delineation of the scope of the Secretary's authority and discretion . . . (and) a determination of whether on the facts the Secretary's decision can reasonably be said to be within that range' "

and the second of which "requires the court 'to consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Id.* at 13–14, nn. 9, 10.

Section 1500c of the Housing Act of 1961 establishes four conditions as a prerequisite of the approval by the Secretary of the conversion of open space land to other uses. It specifies that such approval shall not be given unless

(1) the conversion is essential to the orderly development and growth of the urban area involved;

(2) the conversion is in accord with the applicable comprehensive plan for the area;

(3) open space land of at least equal fair market value is substituted for the converted land; and

(4) open space land of as nearly as feasible equivalent usefulness and location is substituted.

Thus, the questions here presented are: (1) whether the Secretary made the four determinations required by § 1500c before approving the conversion; (2) whether in making such determinations he considered the relevant factors; and (3) whether the determinations made constituted a clear error of judgment.

### III.

■ Turning to the defendant Romney's motion for a protective order, he has moved this court for an order pursuant to Fed.R.Civ.P. 26(c) prohibiting the plaintiffs from deposing him in accordance with their notice of deposition filed on February 3, 1971.

Plaintiffs' counsel has indicated that the plaintiffs seek to depose the Secretary in order to ascertain whether he "personally made the determinations required by section 42 United States Code 1500c before approval of the conversion," whether "these determinations were rationally made, based on his personal analysis of the relevant factors to be considered under the statute," and the extent to which he considered and relied on the recommendations of subordinates. (Pltfs' Supplementary Memorandum of Law, filed Apr. 24, 1972, at 4, 8).

■ It is well established that the probing of the mental processes of an administrative decision maker for the purpose of discovering his reasons for an administrative decision is ordinarily to be avoided. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). This proceeding is not a review de novo. As has been previously pointed out, the court's inquiry in reviewing the Secretary's decision approving the conversion is limited to the questions of whether the Secretary made the the required determinations, whether in making these determinations he considered the relevant factors and whether these determinations constituted a clear error of judgment. The Secretary's formal findings, a certified copy of which has been submitted to the court, set forth the determinations made by him before approving the conversion and the evidence considered by him in making these determinations. To the extent that the plaintiffs seek to depose the Secretary in order to ascertain the process by which he reached his decision beyond what he disclosed in his formal findings, such information is simply not relevant to this suit and hence is not a proper subject of discovery. Fed.R.Civ. P. 26(b) (1). Cf. United States v. Northside Realty Associates, 324 F. Supp. 287, 294 (N.D.Ga.1971). Insofar as the plaintiffs seek to depose the Secretary in order to probe matters fully and adequately covered by him in his

findings, such as the determinations made by him and the basis upon which he made these determinations, there would appear to be no legitimate justification for allowing the deposition.

The plaintiffs, however, maintain that it is necessary to depose the Secretary in order to ascertain what determinations he made and the basis on which he made these determinations despite the fact that his findings fully and adequately cover these matters on the ground that these findings, which were not made at the same time as his approval of the conversion, are suspect because they are "post-hoc rationalizations." But they have made no showing of bad faith on the part of the Secretary with respect to his formal findings.[2] In this regard, it should be noted that cabinet officers such as the Secretary "are assumed to be men of conscience." United States v. Morgan, supra, 313 U.S. at 421, 61 S.Ct. at 1004. In the absence of any showing of bad faith on the part of the Secretary, the taking of his deposition by the plaintiffs is not warranted. See Citizens to Preserve Overton Park v. Volpe, supra, 401 U.S. at 420, 91 S.Ct. 814.

In view of the foregoing, the Secretary's motion for a protective order is granted.

### IV.

There remains to be considered the federal defendants' motion for summary judgment.

Since the court now has before it "the entire administrative record which was before the Secretary and upon which he based his approval of the conversion"[3]

and the Secretary's formal findings which fully explain his decision, the record before the court is more than adequate for review of his decision. Citizens to Preserve Overton Park v. Volpe, supra at 420–421, 91 S.Ct. 814.

With respect to the merits of the federal defendants' motion for summary judgment, the findings submitted by the Secretary contain an uncontradicted statement that he made the four determinations required by § 1500c. These findings also indicate that in making such determinations the Secretary considered the relevant factors, and the plaintiffs have offered no affidavits or other materials contra which may be considered on a motion for summary judgment.

The plaintiffs also, however, in effect claim that such determinations constituted a clear error of judgment.

■ The plaintiffs first attack the Secretary's determination that the proposed conversion of open space land was essential to the orderly development and growth of the urban area of Norwalk. The Secretary's findings indicate that this determination was based on a finding by him that "the growing metropolitan area (of Norwalk) needed a large undeveloped tract of land on which to relocate the Norwalk community college" and on a finding by him that the conversion of part of the open space land for educational purposes and the substitution of other designated property for open space purposes "will provide increased recreational opportunities to low-income and minority residents of Norwalk." These findings are amply supported by the administrative record on

2. Although the only fact that the plaintiffs cite in support of their challenge to the validity of the Secretary's findings is the fact that they were not made at the same time as his decision approving the conversion, the plaintiffs do claim in connection with their opposition to the defendants' motions for summary judgment that he acted in bad faith in approving the conversion on the basis of some of the circumstances allegedly surrounding the original acquisition of the

converted land. Conceivably this claim, if true, could have a bearing on the accuracy of his subsequent findings, but that claim, which is discussed infra, is without merit.

3. Affidavit of George A. Karas, Acting Director of the Program Regulations Division of HUD, dated October 21, 1971; see also, Statement of George Romney, Secretary of HUD, dated January 11, 1972.

which the Secretary relied. The plaintiffs assert that there is no necessity for the Norwalk Community College to be located on the open space land which is to be converted and that preservation of this land as open space is essential to the welfare and development of Norwalk in view of the highly urbanized nature of this area, but these are bare assertions. That the plaintiffs or other individuals disagree with the Secretary's determination certainly does not support the conclusion that his determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The plaintiffs also challenge the Secretary's determination that the proposed conversion of open space land was in accord with the applicable comprehensive plan for the area. It is undisputed that the proposed conversion conformed to the applicable comprehensive plan as it existed at the time the Secretary approved the conversion. The plaintiffs assert that the proposed conversion was not in accord with the applicable comprehensive plan as it existed at the time the open space land was originally acquired and that the plan was changed because of "political and prestige pressures" for the establishment of the Norwalk Community College on this land. Such assertions, however, have no bearing on whether the Secretary properly made the determination in question in view of the fact that § 1500c requires only that the Secretary determine that the proposed conversion was in accord with the comprehensive plan in effect when he makes his determination.

The plaintiffs next attack the Secretary's determination that the land which was to be substituted for the open space land which was to be converted had a fair market value at least equivalent to the fair market value of the open space land. The Secretary's formal findings state that this determination was based on information in the administrative record consisting of four appraisals, all of which indicated that the land to be substituted had a fair market value at least equivalent to that of the open space land. The plaintiffs' contention that the land to be substituted did not have the required value rests on an affidavit from another appraiser. The issue here, however, is not what the fair market value of the land in question was, and it is not whether the Secretary's determination in this regard was correct. Rather, the issue is whether the Secretary's determination constituted a clear error of judgment. He cannot be said to have made a clear error of judgment inasmuch as he had before him four opinions by qualified appraisers that the land in issue had the required fair market value.

Finally, the plaintiffs have challenged the Secretary's determination that the land which was to be substituted for the open space land to be converted was of nearly as feasible equivalent usefulness and location. The Secretary's findings indicate that this determination was based on his finding that the land to be substituted was closer to more populated areas and adjacent to Long Island Sound. They also indicate that the determination was based on his finding that only a portion of the original open space land was being converted and that the conversion of this portion would have a negligible effect upon the open space potential of the remainder of the land. The administrative record before the Secretary at the time he made the determination amply supports these findings. The plaintiffs assert that the land to be substituted for the open space land to be converted was not of as nearly feasible equivalent usefulness and location for several reasons and have submitted an affidavit from an appraiser in support of this assertion. All the plaintiffs, however, have established is that there is a difference of opinion concerning the question of whether the usefulness and location of the land to be substituted was equivalent to that of the land to be converted. The fact that there is a difference of opinion concerning this question does not mean that the Secretary's determination constituted a

clear error of judgment, and his determination, viewed in light of his findings and the information contained in the administrative record, cannot be said to have constituted such an error.

 One other claim of the plaintiffs requires comment, to wit: their claim that the Secretary did not act in good faith in approving the proposed conversion. Although it is well established that inquiry into the motives which impel action by administrative decision makers is usually to be avoided, see Citizens to Preserve Overton Park v. Volpe, *supra* 401 U.S. at 420, 91 S.Ct. 814; United States v. Morgan, *supra* 313 U.S. at 422, 61 S.Ct. 999; the courts will review an administrative decision under some circumstances in order to determine if it was made in bad faith. See Citizens to Preserve Overton Park v. Volpe, *supra* 401 U.S. at 420, 91 S.Ct. 814; see also, Adams v. Nagle, 303 U.S. 532, 542, 58 S.Ct. 687, 82 L.Ed. 999 (1938).

Here, however, the plaintiffs have not raised a genuine issue of fact as to whether the Secretary acted in bad faith in approving the proposed conversion. The plaintiffs contend that, despite the fact that federal funds are available under the Open Space Land Program only for the acquisition of permanent open space land, the City of Norwalk used the Open Space Land Program to obtain federal funds for the acquisition of the land in question for the purpose of providing a site for the Norwalk Community College with the knowledge and consent of the federal government. In support of this contention, the plaintiffs rely on a letter dated April 10, 1969, from Frank Zullo, who was the Mayor of Norwalk, in which he sets forth the circumstances allegedly surrounding its acquisition. The letter indicates that Zullo arranged the purchase of the land with the intent that it be utilized once it was acquired as a site for the Norwalk Community College. In the letter Zullo states that prior to the acquisition of the land he met with William Slayton, Commissioner of the Urban Renewal Administration, from whom he ascertained that Norwalk was eligible for a grant under the Open Space Land Program for the purchase of the land, that he told the Commissioner that there was "an excellent possibility that at least a part of the land might later be used for educational purposes," and that the Commissioner informed him that "we would be able to affect (sic) this program at a later date."

Slayton's forecast simply has no bearing on whether the Secretary acted in good faith when he approved the conversion of this land. In this regard, it should be noted that under § 1500c of the Housing Act of 1961 the Secretary himself must personally approve the conversion and that this authority has expressly not been redelegated to any other official of HUD. There is no indication that the Secretary or the HUD officials who made recommendations to him regarding approval of the proposed conversion were in any way involved in or knew of the discussions between Zullo and Slayton which the aforementioned letter states took place. Hence, no inference reflecting on the good faith of the Secretary can be drawn from these discussions. Cf. United States v. Morgan, *supra* 313 U.S. at 421, 61 S.Ct. 999.

For the foregoing reasons, the court finds that there are no genuine issues of material fact and that the federal defendants are entitled to judgment as a matter of law.

### V.

The defendant City of Norwalk has also moved for summary judgment.

In a Memorandum of Decision, dated May 25, 1971, this court denied the City of Norwalk's motion to dismiss for reasons which need not be repeated here, but in so doing the court stated that the plaintiffs' claims against the city "will be limited to those arising under the federal statute," namely those relating to the Secretary's allegedly improper approval of the conversion. Since the court has concluded that the federal defendants are entitled to summary judg-

ment, it follows that the city is also entitled to summary judgment, with respect to the federal claims asserted against it by the plaintiffs. Accordingly, the city's motion for summary judgment is granted to this extent.

### VI.

To recapitulate:

1. The defendant Secretary Romney's motion for a protective order prohibiting the taking of his deposition by the plaintiffs is granted.

2. The federal defendants' motion for summary judgment is granted.

3. The defendant City of Norwalk's motion for summary judgment is also granted with respect to the federal claims asserted against it by the plaintiffs.