Charles A. SCHICKE et al., Appellants,

v.

George ROMNEY, Secretary of Housing and Urban Development, and City of Norwalk, Appellees.

No. 283, Docket 72–1849.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1972.

Decided Feb. 20, 1973.

John Keogh, Jr., Norwalk, Conn. (John A. Mottalini and Keogh, Candee & Burkhart, Norwalk, Conn., on the brief), for appellants.

Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., and Walter H. Fleischer, Atty., Washington, D. C., Stewart H. Jones, U. S. Atty., for the D. Conn., on the brief), for appellees.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

This is an appeal from an order of the District Court of Connecticut, reported at 346 F.Supp. 417 (D.Conn.1972), granting summary judgment in favor of defendant George Romney, Secretary of Housing and Urban Development (HUD),[1] and the City of Norwalk, and dismissing this suit for declaratory and injunctive relief by 48 residents of the City of Norwalk, Connecticut. Prior to granting summary judgment, Chief Judge Blumenfeld also granted Secretary Romney's motion for a protective order prohibiting the taking of his deposition by the plaintiffs. Plaintiffs had brought suit seeking a declaratory judgment that the approval by Secretary Romney of the conversion of 43 acres of property, originally acquired by the City of Norwalk as parkland under the Open-Space Land Program of the Housing Act of 1961, as amended, 42 U.S.C. §§ 1500–1500e (1964 ed., Supp. V), to use as the site for the Norwalk Community College was illegal and invalid. They also had sought to enjoin the Secretary from approving the city's pending application for the conversion of 14 additional acres to be used for the same purpose and to enjoin the city from conveying any portion of the land in question to the state.[2] For the reasons stated below, we reverse and remand to the district court for further proceedings not inconsistent with this opinion.

I

In November 1965 the City of Norwalk, at a total cost of $1.5 million, acquired for use as a park approximately 196 acres of land, known as the Gallaher Estate, situated partly in the northeastern portion of Norwalk and partly in the adjoining town of Wilton. The federal government, pursuant to the Open-Space Land provisions of the Housing Act of 1961, as amended, reimbursed the City for one-half of the purchase price, or $750,000. Under the Act the Secretary of HUD is authorized to make grants to states and local public bodies of up to 50% of the total cost of acquiring and developing permanent open-space land.[3] The state of Connecticut, under its own open-space program, paid $375,000 or 25% of the cost, while the City of Norwalk paid the remaining 25%.

In 1967 Norwalk initiated plans to withdraw 57 acres of this property from

---

1. Originally, the only federal defendant named in the suit was the United States government, but on November 6, 1970, the district court granted plaintiffs' motion to join Secretary Romney as a defendant. The United States was subsequently dropped as a defendant. *See* Memorandum of Decision, dated May 25, 1971.

2. The amended complaint also named the State of Connecticut as a defendant and raised additional claims against the City of Norwalk. See footnote 9 *infra.* In a Memorandum of Decision, dated May 25, 1971, the district court granted the state's motion to dismiss and limited the claims against the City of Norwalk to those arising under the federal statutes. See footnote 9 *infra.* Plaintiffs have not appealed from this order.

3. 42 U.S.C. § 1500a(a) (1964 ed., Supp. V) provides:

    (a) In order to encourage and assist in the timely acquisition and development of land to be used as permanent open-space land, as defined herein, the Secretary of Housing and Urban Development . . . is authorized to enter into contracts to make grants to States and local public bodies to help finance the acquisition of title to, or other permanent interests in, such land, and the development, for open-space uses, of land acquired under this chapter. The amount of any such grant shall not exceed 50 per centum of the total cost, as approved by the Secretary, of such acquisition and development.

open-space designation so that it could be used as the site for the Norwalk Community College.[4]  The City wished to substitute 29.9 acres of property, known as the Taylor Farm, located approximately six miles from the Gallaher Estate and adjacent to the Norwalk public beach on Long Island Sound.  Section 1500c of the statute permits the conversion of open-space land to other uses with the approval of the Secretary of HUD, if he finds that certain conditions are met.[5]  The section specifies that approval shall not be given unless (1) the conversion is "essential to the orderly development and growth of the urban area involved"; (2) the conversion is "in accord with the then applicable comprehensive plan" for the area; (3) "open-space land of at least equal fair market value" is substituted for the converted land; and (4) open-space land of "as nearly as feasible equivalent usefulness and location" is substituted.[6]

Pursuant to these provisions the Secretary, on November 10, 1969, approved the conversion of 42 acres of the Gallaher property and the substitution of the Taylor Farm.  An application to convert 14 additional acres is still pending.[7]

## II

The plaintiffs, all of whom own property in close proximity to the Gallaher Estate, started suit on behalf of all residents, property owners, and taxpayers in the northeastern part of the City of Norwalk against the City and the federal government to invalidate the conversion of the Gallaher Estate and the substitution of the Taylor Farm.[8]  They contend (1) that Secretary Romney did not personally make the four determinations required by § 1500c before he approved the conversion of the open-space land in question; (2) that he did not consider all relevant factors when making the findings necessary to his deci-

4. The campus was to consist of 57 acres from the Gallaher Estate and 25 acres from the adjacent Cranbury Elementary School.

5. § 1500c.  Conversions to other uses.
    No open-space land for the acquisition of which a grant has been made under this chapter shall, without the approval of the Secretary, be converted to uses other than those originally approved by him.  The Secretary shall approve no conversion of land from open-space use unless he finds that such conversion is essential to the orderly development and growth of the urban area involved and is in accord with the then applicable comprehensive plan, meeting criteria established by him.  The Secretary shall approve any such conversion only upon such conditions as he deems necessary to assure the substitution of other open-space land of at least equal fair market value and of as nearly as feasible equivalent usefulness and location.

6. As amended in 1970, the statute now provides:
    No open-space land for the acquisition of which a grant has been made under section 1500a of this title shall be converted to uses not originally approved by the Secretary without his prior approval.  Prior approval will be granted only upon satisfactory compliance with regulations established by the Secretary.  Such regulations shall require findings that (1) there is adequate assurance of the substitution of other open-space land of as nearly as feasible equivalent usefulness, location, and fair market value at the time of the conversion; (2) the conversion and substitution are needed for orderly growth and development; and (3) the proposed uses of the converted and substituted land are in accord with the then applicable comprehensive plan for the urban area, meeting criteria established by the Secretary.

7. Although the City of Norwalk initially requested that the Taylor Farm be substituted for 57 acres of the Gallaher property, it subsequently agreed to scale down the requested conversion to 43 acres of the Gallaher Estate.  Other property was then found to substitute for the 14 additional acres.

8. All of the plaintiffs allege that they will suffer direct monetary loss ranging from $6,000 to approximately $15,000 from the proposed conversion because of the reduction in property values in the area.  All but one of them allege damages in excess of $10,000.

sion, including, *inter alia,* the finding that the conversion was in accord with the Norwalk "comprehensive plan"; and (3) that his decision approving the conversion was arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A) (1964 ed., Supp. V). See Schicke v. United States, 346 F.Supp. 417, 419–420 (D.Conn. 1972). They also claim that the Secretary and the City of Norwalk acted in bad faith.[9]

On May 25, 1971, the District Court denied the Secretary's motion to dismiss the action for lack of jurisdiction over the subject matter and failure to state a claim on which relief can be granted. In light of the Supreme Court's decision in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the court at the same time reserved decision on the Secretary's motion for summary judgment in order to allow the parties additional time to submit any further material which might be relevant to the consideration of the motion.

On October 7, 1971, Judge Blumenfeld again postponed decision on the federal defendant's motion for summary judgment because of the apparent incompleteness of the administrative record filed with the court. However, on November 24, 1971, on the basis of the entire administrative record which was then before him, he denied the motion for summary judgment. He found that the record was not adequate for reviewing the Secretary's decision because the Secretary had failed to make any formal findings.

On January 24, 1972, the Secretary filed formal findings with the court and renewed the motion for summary judgment. The findings consisted of a "Determination of the Secretary upon Application for Conversion of Open Space Land Pursuant to § 704 of the Housing Act of 1961," dated January 11, 1972, which stated that the Secretary had made the necessary findings when he originally gave his approval of the conversion more than two years before, and named the portions of the administrative record on which he had relied. On the basis of the Secretary's motion and supporting evidence the City of Norwalk, on February 3, 1972, also moved for summary judgment.

In order to oppose the Secretary's motion, the plaintiffs, on February 3, 1972, filed a notice of deposition of Secretary Romney. Thereafter, the Secretary moved for a protective order prohibiting the taking of his deposition. Although the plaintiffs formally objected to the district court hearing the motion for a protective order and the motions for summary judgment at the same time, the motions were argued together on April 14, 1972. In an opinion, dated May 3, 1972, the district court granted Secretary Romney's motion for a protective order, granted his motion for summary judgment, and granted the City of Norwalk's motion for summary judgment.

Subsequently, the plaintiffs made a motion to reargue based on newly discovered evidence.[10] This motion was denied and final judgment was entered dismissing the action on June 14, 1972.

---

9. The amended complaint also named the State of Connecticut as a defendant and asserted that the state's approval of the proposed conversion was in violation of section 7–131i of the Connecticut General Statutes. The complaint further alleged that approval of the conversion by the City was violative of section 1–1.89 of the Norwalk City Charter. By way of additional relief, the complaint sought a declaratory judgment that the state and the city acted illegally and invalidly in approving the conversion, that the city acted illegally and invalidly in offering the land to the state, and that the state

acted improperly in agreeing to purchase the property. They also sought to enjoin the State of Connecticut from purchasing the land and constructing a community college thereon. However, in its Memorandum of Decision, dated May 25, 1971, the district court granted Connecticut's motion to dismiss for lack of a federal question upon which to sustain jurisdiction and limited the plaintiffs' claims against Norwalk to those arising under the federal statute. The plaintiffs have not appealed from this order.

10. See footnote 11 *infra.*

III

Appellants claim on appeal that the district court's grant of summary judgment cannot stand because the district court should not have granted Secretary Romney's motion for a protective order. Appellants allege that in denying them the opportunity to depose Secretary Romney, the district court deprived them of the information in the Secretary's possession that was necessary to oppose effectively the motions for summary judgment. Cf. Subin v. Goldsmith, 224 F.2d 753, 760 (2d Cir. 1955).

Appellants also contend that even on the record as it now stands, the district court was incorrect in granting summary judgment because there already exist several genuine issues of material fact. F.R.Civ.P. 56(c). For example, appellants assert that the Secretary's "Determination," dated January 11, 1972, leaves unclear whether the Secretary personally made the four required findings. Since the authority to approve conversion of open-space land to other uses had not been delegated, the Secretary was obliged personally to approve this conversion. See 31 Fed.Reg. 7358 (1966). Appellants urge that a letter, dated December 2, 1969, sent to a member of the family of one of the plaintiffs by Harrison Knapp, Director of the Community Relations Division of the Department of Housing and Urban Development, contains the implication that the Secretary did not make the findings himself.[11]

Appellants further contend that, considering the administrative record and the Secretary's formal findings, there are genuine issues of material fact about whether the Secretary made each of the four required findings on the basis of all of the relevant factors. Appellants assert (1) that the Secretary, in reaching his conclusion that the proposed conversion was "essential to the orderly development and growth of the urban area involved," may have relied on a non-existent State of Connecticut requirement that Community Colleges must have a campus of at least 100 acres; (2) that the Secretary had no way in which to verify that the conversion was "in accord with the then applicable comprehensive plan," since Norwalk's comprehensive plan was not included in the administrative record; (3) that the Secretary could not make an accurate finding that the substituted open-space land was of equivalent fair market value on the basis of the HUD appraisals, because they were "confusing" and "inconclusive"; and (4) that, in making his finding that the substituted land would be "of as nearly as feasible equivalent usefulness and location," the Secretary relied to too great an extent on the representations of local officials.

Finally, appellants argue that there is a factual issue about whether the defendants were acting in bad faith in the administrative proceedings. The basis for this claim is that there is some indication in the administrative record that, at the time of the original acquisition of the Gallaher Estate under the Open-Space Program, the City already intended to use part of the property for the site of a community college and that the Commissioner of the Urban Renewal Administration (predecessor of the Secretary of Housing and Urban Development) was aware of this plan.

IV

■ In Citizens to Preserve Overton Park v. Volpe, *supra*, the Supreme Court dealt at length with the standard of judicial review of informal agency action. The Supreme Court stated that the proper standard of review is determined by § 706 of the Administrative Procedure Act, 5 U.S.C. § 706 (1964 ed., Supp. V),[12] and that since neither the

---

11. It was this letter which formed the basis for the motion to reargue filed May 8, 1972. See footnote 14 *infra*.

12. 5 U.S.C. § 706 (1964 ed., Supp. V) provides:
Scope of review
To the extent necessary to decision and when presented, the reviewing court shall

substantial evidence test nor de novo review is authorized, a reviewing court is limited to setting aside informal agency action that does not comply with constitutional, statutory, or procedural requirements or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Citizens to Preserve Overton Park v. Volpe, *supra*, 401 U.S. at 414, 91 S.Ct. at 822. See 5 U.S.C. §§ 706(2)(A), (B), (C), (D) (1964 ed., Supp. V). In applying this standard the court must conduct a substantial inquiry, "a thorough, probing, in-depth review" of the administrative action, Citizens to Preserve Overton Park v. Volpe, *supra* at 415, 91 S.Ct. at 823, and to do so, it must have before it the full administrative record which was before the agency and on which the agency determination was based. Id. at 419, 91 S.Ct. 814.

■ We find that in one important respect the Secretary's decision to approve the conversion of the Gallaher Estate was deficient and, therefore, that the judgment of the district court must be reversed. The administrative record in this case fails to show that the Secretary has followed the mandate of the statute in certifying that the conversion-substitution involved here was consistent with any comprehensive plan which the City might have had.

■ The Open-Space Land Program was enacted to help preserve open-space land in the vicinity of urban areas and to encourage local governmental bodies to plan for the most efficient use of this increasingly scarce resource. "[A]dequate comprehensive area planning is . . . an essential feature of the [open-space] program." See 1961 U.S. Code Cong. & Admin.News, p. 1973. According to the Congressional declaration of findings and purpose, there is a pressing need for "better coordinated local efforts to beautify and improve open space and other public land throughout urban areas to facilitate their increased use and enjoyment by the Nation's urban population." 42 U.S.C. § 1500(b) (1964 ed., Supp. V). It is apparent, therefore, that the statute is intended to assure that state and local governments formulate complete and effective programs to guarantee the satisfactory preservation and full utilization of park and recreational land in and near our metropolitan areas.

To implement this policy the statute specifies that before the Secretary may enter into contracts to make grants under § 1500a, he must first find "that such assistance is needed for carrying out a unified or officially coordinated program, meeting criteria established by him, for the provision and development of open-space land as part of the comprehensively planned development of the urban area." 42 U.S.C. § 1500b(a) (1964 ed., Supp. V). According to the Senate report on the proposed measure, what § 1500a envisions is "not just

decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

. . . the preparation of comprehensive plans for long-range development, but also . . . such matters as the scheduling of public facilities construction, the provision of appropriate land-use regulations, and the coordination of development activities proposed by different jurisdictions within the urban area." See 1961 U.S. Code Cong. & Admin.News, p. 1974. Before federal funds are expended to acquire open-space land, the Secretary must "assure" himself "that local governing bodies are preserving a maximum of open-space land, with a minimum of cost, through the use of existing public land; the use of special tax, zoning, and subdivision provisions; and the continuation of appropriate private use of open-space land through acquisition and leaseback, the acquisition of restrictive easements, and other available means." 42 U.S.C. § 1500b(b) (1964 ed., Supp. V).

Recognizing that changing patterns of development in urban areas may demonstrate that open-space land acquired with federal funds might better be used for other public purposes, the statute in § 1500c provides for conversion of open-space land to other uses with the approval of the Secretary. However, a substantial risk exists that communities that are confronted with the need for new public facilities will wish to utilize existing open-space land as a cheaper alternative to undergoing the high cost of acquiring private land. See 1961 U.S. Code Cong. & Admin.News, p. 1975. To prevent undermining the goals of the open-space program in this way, § 1500c requires that the Secretary first make a series of determinations before giving his approval—including a finding that the conversion is "in accord with the then applicable comprehensive plan" for the land. See 42 U.S.C. § 1500c (1964 ed., Supp. V).

This requirement assures that the important statutory policy of promoting local planning efforts as a means of fostering the orderly development of urban areas and the effective utilization of existing and to-be-acquired open-space land will continue to be carried out. Accordingly, the Secretary must conduct a review of local planning efforts before making the finding that the conversion is in accord with the local comprehensive plan. The Secretary or members of his department must make a detailed study of the same items that the Secretary is intended to consider under § 1500b when making an initial grant to acquire open-space land. At the very least, such an examination requires that the Secretary or members of his department have inspected, and be thoroughly familiar with, the contents of whatever documents comprise the locality's comprehensive plan.

The "Determination" submitted to the district court contains the Secretary's findings pursuant to § 1500c of the Act. The Secretary states in the "Determination" that *The proposed conversion was in accord with the applicable comprehensive plan for the area.* (Italics in original.) The Secretary further states that in making this finding he relied on three items in the record. The first item is a letter, dated January 22, 1968, from Norwalk Mayor Frank Zullo to William Davis, Acting Assistant Regional Administrator for Metropolitan Development of HUD. This letter contains a statement by Mayor Zullo that "Both the Gallaher and Taylor lands are reserved for open space in our city's comprehensive plan," and a reference to the fact that "the location of the college next to the Gallaher park will thus be in accord with our Master Plan of Parks." [13]

---

13. The letter also contains the following comments by Mayor Zullo:
"I cannot emphasize too strongly that in a city such as ours, with a low and rapidly diminishing amount of vacant land, you buy the land when and where it is available, not always according to the dictates of an ideal plan sometimes incapable of realization. You buy the amount available if you can afford it,

The Secretary also relied on a memorandum, dated January 6, 1969, from Mr. Frank Batstone, Acting Director of Planning, to Mr. William Davis. This one-page memorandum states that the regional office has "considered the relevant development proposals incorporated in Norwalk's comprehensive development plan and open-space acquisition plan and program" and concludes that "the conversion is in accord with the development policies which are part of the City's Comprehensive Plan." The final item referred to in the Secretary's "Determination" is a letter, dated June 4, 1969, from Mr. Richard Carpenter, Planning Director of the South Western Regional Planning Agency to Mayor Zullo. This letter contains a resolution of the South Western Regional Planning Agency endorsing the proposed conversion-substitution because, among other reasons, the exchange will not impair the City of Norwalk or the regional open-space programs.

It is readily apparent that there is no evidence in the administrative record that the Secretary or his subordinates have ever known what the Norwalk comprehensive plan was composed of or have ever conducted their own independent examination of it. Obviously, the two letters from local officials—Mayor Zullo and Mr. Carpenter—do not satisfy the Secretary's obligation. It may be that if HUD were in possession of the relevant documents and someone in the Department had become acquainted with their contents, the assistance of local officials might be of some help in interpreting them; but the bare, unsupported conclusions of local officials do not fulfill the statutory obligation of HUD and the Secretary to ascertain that there is in fact a plan or plans which may fairly be considered as a "comprehensive plan" as that term is meant in the governing statute.

In his "Determination" the Secretary also says that he relied on the letter

from Mr. Frank Batstone to Mr. William Davis in which Mr. Batstone states that the regional office has "considered" Norwalk's "relevant" development proposals and has decided that the conversion is "in accord" with them. However, this letter, like the other two, contains no explanation of the nature or content of the Norwalk comprehensive plan. The letter is a brief, one-page statement of the regional office's conclusions and contains no report of the facts which were relied upon, the factors which were considered, or the reasoning on which the conclusions were based. Thus, the letter leaves in doubt whether the regional staff itself ever saw anything in the nature of a comprehensive plan or whether they merely relied on statements by local officials. Furthermore, the remainder of the administrative record is silent on this matter. Nowhere in the documents submitted to the district court is there a copy of any comprehensive plan, a statement of what the plan contains, or a reference to where it is to be found.

At oral argument we asked counsel for appellees what the plan consisted of and they were unable to inform us. It was only in a supplemental memorandum submitted by the City of Norwalk, dated December 12, 1972, that the first faint glimmer of light was shed on this matter. It appears that a single comprehensive plan for Norwalk does not exist, but that there are a series of master plans, such as the Master Plan of Parks, of Schools, of Transportation, as well as subdivision regulations and zoning regulations. Thus there is some question about whether these documents constitute a "comprehensive plan" which meets the statutory criteria. Of course, without the plan itself and the Secretary's detailed findings with respect to it, this court is in no position to decide this issue.

None of plaintiffs' other contentions are persuasive. Plaintiffs claim that

and then you try to fit it into a reasonable scheme for community benefit. Sometimes the scheme should be altered,

as circumstances and resources change. That is what has been done in this case . . . . ."

the Secretary did not personally make all of the findings required by § 1500c. However, the Secretary has stated that he did make the required determinations before giving his approval of the conversion request, and he has set out in his "Determination" the portions of the administrative record on which he relied. Except for the finding regarding the local comprehensive plan, plaintiffs have adduced no credible evidence to indicate that he did not do so [14] and, therefore, the district court's finding that there is no genuine issue of fact as to this matter must stand.

We also find that plaintiffs have raised no genuine question about the merits of the three findings that do not concern the local comprehensive plan. For example, the Secretary's finding that the land which was to be substituted for the converted open-space land had an equivalent fair market value has ample support. The administrative record contains four appraisals from which, upon analysis, HUD officials concluded that the two parcels had an equal fair market value. Contrary to plaintiffs' contentions, there is nothing "confusing" or "inconclusive" about any of these appraisals.

Similarly, the findings that the proposed conversion was "essential to the orderly development and growth of the urban area" and that the substituted land was "of as nearly as feasible equivalent usefulness and location" are supported by the record. Plaintiffs have offered no convincing arguments against, nor do we perceive any objections to, the Secretary's conclusion that Norwalk's desire to improve its local community college—the first in the state —by moving it from its temporary quarters to a permanent facility with a campus of its own is consistent with the orderly development and growth of the area. The substitution of the Taylor Farm, which is closer to the low income and minority group population of Norwalk, has the additional benefit that it will apparently enhance the recreational opportunities available to these groups. Thus, the plaintiffs' suggestion that the Secretary may have relied on a mistaken representation that Connecticut law requires all community college campuses to be at least 100 acres does not raise any serious question in our minds in light of the other substantial reasons for the Secretary's approval.

The fact that Taylor Farm is located near Long Island Sound and closer to the more populated areas of Norwalk so that it will enhance the recreational opportunities for low-income and minority groups also strongly supports the finding that the substituted land is of equivalent usefulness and location to the Gallaher property. In addition, it must be remembered that since only a portion of the Gallaher property is being converted,

---

14. Plaintiffs allege that the following letter from Harrison Knapp, Director of the Community Relations Division of HUD, to one of the plaintiffs, which formed the basis for the motion to reargue, implies that the Secretary did not make the necessary findings:

Dear Mr. Konstantin:

Secretary Romney has asked me to respond to your letter of November 19. Although I appreciate your concern about the location of the Community College, the Department of Housing and Urban Development did not make the decision. It was a local decision by the officials of Norwalk. I think you should go down to the Norwalk Redevelopment Agency and let Mr. Jay Van Coevering know how you feel about this matter. He is the Redevelopment Administrator of the Norwalk Redevelopment Agency located at 141 East Avenue.

Good luck to you!

Sincerely,

/s/ HARRISON KNAPP

Harrison Knapp

Director

Community Relations Division

As Chief Judge Blumenfeld found, this letter has no bearing on whether the Secretary personally made the required findings, since the letter is clearly referring to the initial site selection, which is a purely local matter, and not the ultimate federal government approval.

a large part of the open-space potential of that property remains unimpaired. Although appellants object that local proponents of the proposed conversion have stressed these same considerations, this fact does not detract from the Secretary's conclusion, which was based on the independent analysis of these factors by HUD officials. See memorandum from Mr. William Davis to Mr. Arthur Davis (June 27, 1969).

We conclude, therefore, that the Secretary's findings on these three matters are supported by the record and that the district court properly ruled with regard to them that the Secretary's conclusions did not constitute a clear error in judgment and that plaintiffs have not raised any genuine disputes about material facts. We also agree, for the reasons stated in the district court opinion, that the facts alleged by the plaintiffs concerning any prior knowledge of government officials at the time the property was first acquired by the city of the plan to construct Norwalk Community College on a portion of the Gallaher site do not present a triable issue of whether the defendants were acting in bad faith in the administrative proceedings. We note, in addition, that there would not appear to be any impropriety in an initial grant of federal funds to acquire open-space land meeting the statutory requirements when certain government officials know that the locality may one day seek to convert a portion of the land in question to use as the site for a community college, if as here such a conversion proposal must first be submitted to the proper administrative authority for review on the merits for compliance with the relevant statutory conversion criteria, including the requirement of substitution of open-space land "of as nearly as feasible equivalent usefulness and location." Possibilities of this nature necessarily

are frequently discussed and considered; that this is so is no evidence of bad faith.

Since the Secretary's finding that the proposed conversion is consistent with local comprehensive planning is without support in the record, we reverse the judgment of the district court with regard to both defendants and remand the case for further proceedings. On remand, the district court must determine whether the Secretary has complied with the statutory mandate of § 1500c with respect to the local comprehensive plan. In this connection it may be that the district court should allow plaintiffs the opportunity to pursue all reasonable means of discovery including the taking of depositions. However, we cannot delineate the precise limits of proper discovery on remand. We leave this to the district judge's discretion, noting only that we see no objection to plaintiffs' deposing the Secretary if that should be necessary to a determination of whether the Secretary obeyed the statutory mandate concerning the comprehensive plan. In any event, there must be full inquiry to ascertain the basis of the Secretary's action with reference to any comprehensive plan.

We note, however, that even if the district court concludes that the Secretary failed to follow the mandate of § 1500c in making a determination of the conversion's consistency with the comprehensive plan, both the Secretary and the City of Norwalk may still desire to proceed with the conversion-substitution at issue here. Should this be the case, the district court may, in its discretion, permit the current Secretary the opportunity, if he so desires, to make a new determination of the question based on a proper analysis of the plan.

Reversed and remanded for further proceedings not inconsistent with this opinion.