**Charles A. SCHICKE et al.**

v.

**James T. LYNN, Secretary of Housing and Urban Development, et al.**

**Civ. No. B–169.**

United States District Court,
D. Connecticut.

March 26, 1974.

John Keogh, Jr., Norwalk, Conn., for plaintiffs.

Leonard S. Hermann, Frank W. Murphy, South Norwalk, Conn., Stewart H. Jones, U. S. Atty., Randolph C. Roeder, Asst. U. S. Atty., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

At an earlier stage in this litigation the Court upheld the determination of Secretary Romney approving the withdrawal of certain land acquired by the City of Norwalk under the Open Space Land Program for use as a park and its conveyance to the State of Connecticut for use as a site for a community or regional college. 42 U.S.C. §§ 1500–1500e. See Schicke v. United States, 346 F. Supp. 417 (D.Conn.1972). On appeal from that order granting summary judgment in behalf of the Secretary, the Court of Appeals held that the administrative record before the Secretary at the time he made his determination was deficient in that it did not establish that the conversion was in accord with the then applicable comprehensive plan for the area.[1] Schicke v. Romney, 474 F.2d 309 (2d Cir. 1973). Circuit Judge Lumbard, writing for the Court of Appeals, noted that the record before the Secretary

"leaves in doubt whether the regional staff itself ever saw anything in the nature of a comprehensive plan or

---

1. As amended in 1970, 42 U.S.C. § 1500c provides:

"No open-space land for the acquisition of which a grant has been made under section 1500a of this title shall be converted to uses not originally approved by the Secretary without his prior approval. Prior approval will be granted only upon satisfactory compliance with regulations established by the Secretary. Such regulations shall require findings that (1) there is adequate assurance of the

substitution of other open-space land of as nearly as feasible equivalent usefulness, location, and fair market value at the time of the conversion; (2) the conversion and substitution are needed for orderly growth and development; and (3) the proposed uses of the converted and substituted land are in accord with the then applicable comprehensive plan for the urban area, meeting criteria established by the Secretary."

whether they merely relied on statements by local officials. Furthermore, the remainder of the administrative record is silent on this matter. Nowhere in the documents submitted to the district court is there a copy of any comprehensive plan, a statement of what the plan contains, or a reference to where it is to be found.

"At oral argument we asked counsel for appellees what the plan consisted of and they were unable to inform us. It was only in a supplemental memorandum submitted by the City of Norwalk, dated December 12, 1972, that the first faint glimmer of light was shed on this matter. It appears that a single comprehensive plan for Norwalk does not exist, but that there are a series of master plans, such as the Master Plan of Parks, of Schools, of Transportation, as well as subdivision regulations and zoning regulations. Thus there is some question about whether these documents constitute a 'comprehensive plan' which meets the statutory criteria. Of course, without the plan itself and the Secretary's detailed findings with respect to it, this court is in no position to decide this issue." 474 F.2d at 317.

On remand the defendant has submitted two affidavits of Mr. Bernard I. Levine of HUD, and attached exhibits, which remedy the deficiency noted by the Court of Appeals. A comprehensive plan contained in a single document, so entitled, which could be reviewed and approved once, is not required by the Department as a prerequisite either for new applications for open-space grant assistance or for later conversion of any part of such acquired property. Rather, the requirement that a program of area-wide comprehensive planning be underway in the urban area in which the property is located contemplates a continuing process of action undertaken by the municipality to regulate and manage land uses consistent with the acqui-

sition and development of open-space needs in the entire area. See Departmental Letter No. OS–12.[2]

In the fall of 1967 the City of Norwalk was considering a proposal to incorporate into its program for the development and use of parks a proposal for the conversion of some open-space land which would involve the surrender of a portion of the Gallaher Estate for use as a community college and the substitution of the Taylor Farm for the surrendered parcel. In September 1967, the City submitted an application for open-space assistance to purchase the Taylor Farm containing a location map labeled "Master Plan of Parks" which indicated that the City had revised its Master Plan of Parks to incorporate the designation of the Taylor Farm as a proposed park site.

Since this was the first major request for a conversion presented to HUD, the application was given special consideration. Mr. Bernard I. Levine of the New York Regional Office of HUD, with members of the Regional Office Metropolitan Development and Planning staff, was called to the HUD Central Office to review the preliminary findings with regard to the statutory prerequisites for conversion and to advise whether approval of the Norwalk proposal would set a sound precedent consistent with the spirit of the Act.

On July 24, 1968, Mr. Levine, the Regional Assistant Director of Planning, accompanied William Davis, Assistant Regional Administrator for Metropolitan Development, to Norwalk to perform a preliminary review of the conversion-substitution proposal. During that visit they met with city officials, including Mayor Zullo, to determine the purposes of the proposal and to evaluate it in the context of the needs and goals of the community. They conducted a site evaluation in which they inspected the two sites to determine their relative desira-

2. This departmental letter was issued primarily to set planning standards for new applications for open-space grant assistance and served also as the basis for the review of proposed conversions of open-space land.

bility for open-space purposes and to assess the impact of the conversion on the remaining portion of the Gallaher Estate. They toured the adjoining neighborhoods to determine the relative proximity of the parcels to areas of high density population, the relative accessibility of each site, and the existence of complimentary adjoining land uses.

For the purposes of determining whether the proposed conversion-substitution was consistent with the local comprehensive planning activities of the City, they reviewed copies of planning documents on file in the Regional Office.

The City of Norwalk had submitted with its application for recertification of its Workable Program its planning documents for review by the Regional Office Planning Division. Of these documents on file in the Regional Office, several were relevant to the determination of whether the conversion was consistent with the City comprehensive planning program. Specifically they include: "A Review of Park Planning 1952–1966;" the Proposed Master Plan Development for Norwalk, adopted by the City Planning Commission and Common Council in April 1962; the Master Plan of Transportation adopted by the Planning Commission in April 1966; and the Capital Budget of the City of Norwalk 1967–1968. Pursuant to a request for recertification of its Workable Program received in March of 1967, the City had previously submitted a document entitled "A Review of Park Planning 1952–1966" which described the past and present park plans and served as a guide to future proposals concerning the City's park system. HUD also had obtained a Building Zone Map which reflected the proposed land uses of Norwalk.

In order to expand and update his familiarity with the local planning program, Levine, accompanied by Constantine Vlatos, a Regional Office urban planner, again traveled to Norwalk on April 7, 1969. During this visit they questioned Mr. Joseph Tamsky, the Director of the Norwalk City Planning Commission, concerning the City's open-space program, and the manner in which it and the proposed conversion would serve the open-space needs of the community and the goals of the local and area-wide comprehensive plans. They were provided access to and conducted a detailed review of the City's planning documents, including the then current Master Plan of Parks and thoroughfare and land use plans.

This thorough review of the planning documents; the site inspection, and his general familiarity with the South Western Regional Planning Agency's [3] program and planning policies led Levine to conclude that the conversion-substitution was in accord with the applicable comprehensive plans.

*Specifically, the City's Planning Commission had incorporated the proposed conversion into its Master Plan of Parks.* The location map as so revised was reviewed by Mr. Levine and Mr. Vlatos in late 1968 and during their visit to Norwalk in April 1969. An operative policy of the open-space planning process in Norwalk, as described in the Review of Park Planning, was to locate parks designed for passive as well as for active use near school sites or areas of public ownership. The location of a community college adjacent to the remaining portion of the Gallaher Estate was therefore not inconsistent with this policy. The conversion-substitution would leave both the beach parks and the Gallaher Estate within the specifications set by the City for "community wide" parks. The Taylor Farm would serve the recreation needs of the lower income families residing in adjacent neighborhoods. The site was surrounded by complementary land uses: neighborhood parks to the north and north-

---

3. A regional multi-jurisdictional agency concerned with coordinating development within

eight adjoining towns in the lower half of Fairfield County.

west, a private golf course to the east, and the public beaches to the south.

Moreover, the conversion was consistent with what were understood to be three fundamental goals of the area-wide plan: (1) to provide open space close to older, high-density neighborhoods; (2) to develop public beach facilities for the region; and (3) to preserve large areas of open space north of the Merritt Parkway. The in-migration of minority families into the South Western Regional Planning area and the scarcity of open-space land in the older areas of the cities contributed to making the Taylor Farm an ideal site. The addition of beach-front back-up areas would permit the Norwalk beach parks to serve the regional demand for such parks. Finally, the remaining portion of the Gallaher Estate was large enough to support the passive and active recreation uses which regional planners sought to preserve in the area north of the Merritt Parkway where it is located.

To supplement Mr. Levine's preliminary determination that the conversion was consistent with applicable plans the City was required to obtain formal approval from the South Western Regional Planning Agency. This agency in 1967 had prepared a plan of development covering the towns of Greenwich, Stamford, Darien, Norwalk, Westport, New Canaan, Wilton, and Weston. During this period regional planning agencies in Connecticut served as a clearing house for review of development proposals by local communities, and the endorsement of this proposal by the South Western Regional Planning Agency was not a mere inconsequential formality. The HUD Regional Office report recommending approval of the conversion-substitution dated June 27, 1969, which summarized Mr. Levine's reasons for concluding that the conversion-substitution was consistent with applicable comprehensive plans was before the Secretary as part of a conversion "package"[4]

and was cited in and attached to his determination dated January 11, 1972.

While it might have been possible to superimpose a map of the Master Plan of Parks upon a Zoning Map, and a map of the thoroughfare system, and a color code to identify various densities of population, schools, industrial, and residential areas to obtain a composite which would disclose that Norwalk had committed itself to a program which provided an open-space element, and to label the composite as Norwalk's Comprehensive Plan for Land Use and Development, such a single document in itself would not necessarily disclose future short-range or long-range open-space programming. Nevertheless, these several documents are relevant to the determination of whether the conversion was consistent with a City comprehensive planning program. As Letter OS–12 itself states regarding whether an open-space proposal is consistent with area-wide and local planning:

> "At a minimum, one of the following conditions relating to the proposed project must be met:
>
> 1. Short-range open-space programing must have progressed to the point where it can serve as a basis for determining that the proposed project is consistent with it, or
>
> 2. The proposed project is urgently needed and can reasonably be expected to be consistent with the program."

Thus the consistency with which the proposed project fits into everything else Norwalk has done to regulate land use within its boundaries is itself evidence of a program or plan. On this basis the detailed, in-depth study by members of HUD of all the steps taken by the City of Norwalk with respect to this open-space conversion, viewed in conjunction with those documents setting forth the various permitted uses of land

---

4. This contained a report from the Regional Office staff, supporting documentation, and recommendations suitable for the Secretary's consideration.

in Norwalk, establishes the existence of a Norwalk comprehensive plan.

In view of the foregoing, I am of the opinion that there was ample basis for the determination of the Secretary that Norwalk did have a "comprehensive plan" and that the "package" which was in the record before him adequately disclosed it. The affidavit of Mr. Levine resolves adversely to plaintiffs all doubts "whether the regional staff itself ever saw anything in the nature of a comprehensive plan or whether they merely relied on statements by local officials." Schicke v. Romney, *supra*, 474 F.2d at 317.

Had all of the foregoing additional underlying facts now disclosed in the affidavits of Mr. Levine in support of this renewed motion for summary judgment been divulged to the Court of Appeals in answer to that Court's inquiry, the additional consideration of this matter on remand would not have been necessary. It is clear that members of HUD made a detailed study of all the factors relevant to a consideration of whether the proposed conversion would be in accord with a comprehensive plan. The several plans reflect every way in which land within the boundaries of the City of Norwalk is used or may be used. Taken together, they constitute a "comprehensive plan for the urban area, meeting criteria established by the Secretary." § 1500c as amended in 1970.

Mr. Levine's affidavits have not been challenged in any respect by plaintiffs, who have neither suggested that any criterion which ought to have been considered by the Secretary was omitted, nor controverted the application of any of those which were before the Secretary. Since there is no issue of material fact in dispute, I find that in approving the City of Norwalk's application for conversion of the open-space land which is the subject matter of this action the Secretary had before him ample evidence that the conversion was in accord with

Norwalk's comprehensive plan, which plan met the criteria established by the Secretary.

Enter judgment for the defendants. So ordered.