**MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMISSION, Plaintiff,**

**v.**

**James L. LYNN, Secretary of the Department of Housing & Urban Development, Defendant.**

**Civ. A. No. 538–73.**

United States District Court,
District of Columbia.

Jan. 8, 1974.

Robert H. Levan, Riverdale, Md., Sanford E. Wool, James W. Tavel, Silver Spring, Md., for plaintiff.

Harlington Wood, Jr., Harold H. Titus, Jr., Harland F. Leathers, James R. Prochnow, Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on Cross Motions for Summary Judgment. These motions are founded upon the pleadings, exhibits and contract in this cause, which reflect the facts hereinafter set forth.

## I. BACKGROUND OF THE CASE

This is a suit for declaratory judgment and injunctive relief. Jurisdiction is found under 5 U.S.C. § 701 et seq. The issue in this case is whether the Defendant abused his discretion and acted in an arbitrary and capricious manner not in accordance with law when he refused to approve a 20-year lease of one acre of Robert M. Watkins Regional Park, Prince George's County, Maryland to Metro Tennis Limited Partnership, of Maryland, to construct, operate and maintain an indoor tennis court, consisting of a minimum of six regulation size courts, accessory restrooms, lockers, shower facilities, pro shop, office, lounge, and vending machine area. The lease would allow Metro Tennis to rent court time to groups or individuals on either a seasonal basis, i. e., the same period each week for a full thirty (30) weeks from October to April, or on an hourly basis, referred to as "Spot Play Time." The rental costs on weekdays for the "Spot Play Time" ranges from $8.00 per hour between 6:00 a. m. and 4:00 p. m. to $11.00 per hour between 4:00 p. m. to 12:00 p. m. On the weekends, the rates would range from $10.00 per hour for non-prime time and $12.00 per hour for prime time, i. e., 9:00 a. m. to 10:00 p. m.

The Defendant has the authority to approve or disapprove any transfers of the parkland in question pursuant to the terms of a contract signed on August 22, 1963 between the Plaintiff and the U. S. Housing & Home Finance Agency, the Defendant's predecessor. The contract, Plaintiff's Exhibit No. 1, entitled "Contract for Grant to Acquire Open Space Under Title VII of the Housing Act of 1961," 42 U.S.C. § 1500 et seq., as amended, P.L. 87–70, 75 Stat. 149, provided that the United States government would contribute 30%, or $2,108,785.00,

of the total cost of acquisition of the "open space" parkland. Under the contract's terms, Sec. 110, Part Two, before the Plaintiff can sell or lease any part of land acquired pursuant to the contract, it must first obtain the written approval of the Administrator, now the Secretary. The Secretary's approval is conditional upon a finding that "such leasing or sale is consistent with the program and adequate controls are embodied in the lease or deed to assure the preservation of the open space use or uses of such land as set out in Sec. 2(b) of Part I of this contract." Section 2(b) defines "open space" as: "Park and outdoor recreation activities and uses compatible with maintaining the open space character of the land involved: conservation purposes."

The Secretary considered the Plaintiff's request to lease the land twice. He denied it twice, on the grounds that the fees charged would exclude certain segments of the community from using the facility. The parkland is within four miles of a Model Cities Redevelopment Program for low income families. Thus the conflict between the parties concerns whether the Defendant's measure of public accessibility as determined by the proposed fees is a proper basis under the contract to disapprove the lease. There is no dispute that the Secretary has permitted the leasing of concessions for recreational activities on "Open Space" parklands which charge a "reasonable" fee. The Plaintiff maintains that it must permit the fees cited above to make the project sufficiently attractive to induce a private concern to build and manage the facility, and thus avoid taxing public revenues. The Plaintiff further maintains that the cit-

ed fees are "reasonable" in light of the fees charged at similar facilities in the metropolitan area.[1] The Plaintiff argues further that the contract prohibits specifically only those restrictions based on race, creed, color, national origin or place of origin; Part II, Sec. III(c); and that it was never the Congress' intent that every single acre of land be equally available to every person within the service area.

## II. APPLYING THE "OVERTON PARK," 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136, STANDARD OF REVIEW OF INFORMAL AGENCY ACTION, THE COURT FINDS THE DEFENDANT DID NOT ABUSE HIS DISCRETION AND DID ACT IN ACCORDANCE WITH THE LAW

The threshold question the Court has had to consider in this case is the availability of administrative review of the Defendant's action. It is hornbook law that any discretionary, informal decision of an administrator is subject to judicial review unless there is a specific showing by "clear and convincing evidence" of a legislative intent to restrict access to judicial review. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1971); Peoples v. U. S. Dept. of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970). See, Berger, "Administrative Arbitrariness and Judicial Review," 65 Col.L.Rev. 55 (1965). There is no clear indication that Congress sought to preclude judicial review of the Administra-

---

1. The lease, attached to the complaint, allows the fee schedule to be changed, subject to the approval of the Plaintiff, "which approval shall not be unreasonably withheld, and the Commission, in considering any proposed increase, shall give consideration to the prices charged for similar facilities and services furnished or sold outside the areas ad-

ministered by the Commission under similar conditions . . . ." See Lease, Plaintiff's Exhibit No. 2, at 17. The Plaintiff maintains the fee schedule would compare with those of private facilities "to prevent unfair competition." See Plaintiff's Motion for Summary Judgment filed July 16, 1973, at 2.

tor-Secretary's action under Title VIII of the Housing Act of 1961. Therefore, the Court has conducted an inquiry into the decision of the Administrator within the scope of review prescribed by § 706(2)(A) of the Administrative Procedure Act. 5 U.S.C. § 706.

■ Although *Overton Park* requires the reviewing Court to conduct a thorough and substantial review, the Court's area of inquiry is a narrow one, confined to setting aside agency action that does not comply with constitutional, statutory or procedural requirements or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Citizens to Preserve Overton Park v. Volpe, *supra,* 401 U.S. at 414, 91 S.Ct. at 822. Schicke v. Romney, 474 F.2d 309 (2nd Cir. 1973). The reviewing Court cannot substitute its judgment for that of the Administrator. Within this perimeter *Overton Park* requires the Court to scrutinize the facts to determine: (1) whether the Secretary acted within the scope of his authority; (2) whether the decision was based on a consideration of relevant factors; (3) whether there was a clear error of judgment and (4) whether the Administrator's action followed the necessary procedural requirements.

■ The Court has before it a sufficient administrative record to determine whether there has been an abuse of discretion in the Defendant's refusal to approve the leasing to Metro Tennis. Neither party alleges that the suit involves a request to "convert" parkland under 42 U.S.C. 1500c. All parties agree there is no dispute as to any facts. Nor is there any allegation that the Defendant violated the necessary procedural requirements. The Plaintiff has the burden of proof of showing that the refusal to approve the lease was arbitrary, capricious and not in accordance with law. Udall v. Washington, Virginia and Maryland Coach Co., 130 U.S.App.D.C. 171, 393 F.2d 765, 769 (1968).

■ Applying the standard above, the Court finds the Defendant acted in accordance with the law. The Defendant is responsible for conducting the Open Space program in accordance with the policy articulated by Congress. The law empowers the Defendant to enter contracts in furtherance of the program and specifically grants the Defendant the authority to set further terms and conditions for assistance under the title (§§ 1500–1500e of the title) as he determines to be desirable. The Plaintiff was aware of the Defendant's grants of power under the act at the time the contract was signed. Furthermore one of the specific provisions of the contract, Section 110, states in no uncertain terms that leasing approval is conditioned upon a showing that the lease would be consistent with the program and contained adequate controls to preserve the "open space" use of the land as defined in § 2(b), Part I, of the contract. Under that provision of the contract Open Space is "park and outdoor recreation activities and uses compatible with maintaining the open space character of the land involved: conservation purposes." This language underlines the fact that the parkland was acquired first and foremost to preserve open areas for all urban dwellers as a counterweight to the sprawl, blight and deterioration of the cities. The contract language particularizes "outdoor" recreation which would preserve the open, natural character of the area, a scenic refuge from city smog, congestion and closeness.

■ Accessibility of general community to these green havens has been a factor the Defendant has emphasized in considering leasing requests. *See* Affidavit of Donald E. Shirar, at 3, Defendant's Exhibit D. An agency's consistent and long-standing practice and interpretation of its responsibilities under its authorizing statute is to be given due consideration by the reviewing court in examining an agency decision. Traffi-

cante v. Metropolitan Life Insurance Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed. 2d 415 (1972). The record indicates that the Defendant also considered another significant factor in its decision. The Plaintiff has an alternative site available for the tennis facility which does not involve Federally-assisted-procured land. *See* Defendant's Reconsideration Letter of December 15, 1972, Defendant's Exhibit C.

There is one other factor which should not be overlooked. Had the Defendant approved the lease based upon the Plaintiff's showing, the Defendant's action would *not* have been in accordance with law. Recent HUD regulations governing the Open Space program, in particular § 540.250(e)(1), specify that the Secretary will approve a long-term transfer (over three years) only in unique or exceptional circumstances and then only when the transferred use would provide a greater benefit to the community than did the original use. *See* 36 Fed.Regs. 24725, 24726 (December 22, 1971). The Defendant determined that the use of part of the parkland for an indoor tennis court as described by the Plaintiff would not provide a greater benefit to the community than the original use of the land. The proposed fees would place the tennis court in the same league as other indoor tennis courts in the area whose rates make them somewhat restricted and exclusive. Thus the new court would not provide an increased opportunity for the community at large to play tennis year around. The Defendant is bound by existing law and so is this review court. Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 280, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). The Court finds that the Defendant acted within the scope of his authority and in accordance with the law. There is no clear error of judgment.

An order in accordance with this Opinion will be entered as of this same date.